Electronically FILED by
Superior Court of California,
County of Los Angeles
8/04/2023 2:10 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By Y. Ayala, Deputy Clerk

1  HYDEE FELDSTEIN SOTO, City Attorney (SBN 106866)
   KATHLEEN A. KENEALY, Chief Assistant City Attorney (SBN 212289)
2  JONATHAN CRISTALL, Superv. Asst. City Attorney, SBN (191935)
   LIORA FORMAN-ECHOLS, Superv. Deputy City Attorney (SBN 184135)
3  OFFICE OF THE LOS ANGELES CITY ATTORNEY
   201 North Figueroa Street, 13th Floor
4  Los Angeles, CA 90012
   Telephone: (213) 978-8080
5  Facsimile: (213) 482-9549
   Email: liora.forman-echols@lacity.org
6  Attorneys for Plaintiff                      **NO FEE – GOV'T CODE § 6103**

7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            COUNTY OF LOS ANGELES, CENTRAL DISTRICT

10

11  THE PEOPLE OF THE STATE OF CALIFORNIA,   )  Case No.: 23STCV18514

12                    Plaintiff,              )  **COMPLAINT FOR ABATEMENT AND**
                                             )  **INJUNCTION**
13          vs.                              )
                                             )  [PENAL CODE SECTION 11225, ET
14                                           )  SEQ.; CIVIL CODE 3479, ET SEQ;
                                             )  BUS. & PROF. CODE SECTION
15  RISH INVESTMENTS, INC., a California      )  17200, ET SEQ.]
    corporation; GAZI MONIRUL ISLAM also known as )
16  GAZI M. ISLAM and GAZI ISLAM, an individual )  (Unlimited Action)
    doing business as New Gage Motel; and DOES 1 )
17  through 50, inclusive,                    )
                                             )
18                                           )
                     Defendants.             )
19                                           )
                                             )
20                                           )
                                             )
21                                           )
                                             )
22  _____ )

23

24

25

26

27

28

**INTRODUCTION**

1.     THE PEOPLE OF THE STATE OF CALIFORNIA ("THE PEOPLE") bring this action to enjoin, abate, and prevent a nuisance, as defined in California Penal Code sections 11225, et seq. (the "Red Light Abatement Law" or "RAL") and Civil Code sections 3479, et seq. (the "Public Nuisance Law" or "PNL"), and enjoin unfair business practices under California Business and Professions Code sections 17200, et seq. (the "Unfair Competition Law" or "UCL"), against defendants for permitting, maintaining and allowing blatant prostitution activity and violence at the New Gage Motel, a 16-unit motel located at 6310 S. Figueroa Street in South Los Angeles (the "Property" or "New Gage" or "Motel").

2.     Long-term Property owner Defendant RISH INVESTMENTS, INC. ("RISH" or RISH INVESTMENTS") has owned and operated the New Gage as a prostitution nuisance since 2017.  Defendant GAZI MONIRUL ISLAM, also known as GAZI M. ISLAM and GAZI ISLAM ("ISLAM") is an individual doing business as New Gage Motel who became involved in the New Gage operations in 2022, according to public records.

3.     The prostitution activity at the New Gage is open, brazen and notorious.  There is a near constant presence of sex workers, their customers or "johns," and/or pimps or traffickers circulating through the Property.  Since at least 2017, the Los Angeles Police Department ("LAPD") has conducted at least 16 vice investigations into the New Gage resulting in approximately 16 prostitution-related arrests, one of which involved the sex trafficking of a minor, at or connected to the New Gage.  Additionally, since 2019, three Motel staff members were cited for registration[1] and disorderly house[2] violations, including hourly room rental violations where requisite identification and vehicle information from room renters

---

[1] Los Angeles Municipal Code § 41.49 sets forth the requirements for guest registration and record keeping for Los Angeles motel operators, i.e. each guest must present identification and the motel must maintain a record of identifying person and room information for guests.

[2] Penal Code § 316 states:  Every person who keeps any disorderly house, or any house for the purpose of assignation or prostitution, or any house of public resort, by which the peace, comfort, or decency of the immediate neighborhood is habitually disturbed, or who keeps any inn in a disorderly manner; and every person who lets any apartment or tenement, knowing that it is to be used for the purpose of assignation or prostitution, is guilty of a misdemeanor.

COMPLAINT FOR ABATEMENT AND INJUNCTION

was not obtained.  The New Gage has a well-known and deeply entrenched reputation among law enforcement, the local community, and even on popular online forums as being notorious for prostitution, pimping and human trafficking.  The Google reviews for the New Gage in the last year include some of the following and make clear that the illegal sex trade is flourishing there: "If your [sic] looking for action look no more" and "Very active, I heard [includes a bed emoji]."  Investigations by LAPD as recently as July 2023 confirm that prostitution is thriving at the New Gage.  The following is a summary of some of the recent LAPD-documented prostitution-related activity at the Property:

- On April 21, 2023, two different undercover officers posing as johns were directed to the New Gage by two different prostitutes after agreeing to have sex for money with each of them, respectively.

- On June 27, 2023, at around 4:30 pm, LAPD detectives observed a man in a silver Honda encounter a bikini-clad woman standing on the corner of 66th and Figueroa. The pair drove together to the New Gage and once parked in the New Gage lot, the woman led him up the stairs to Room 13 where she opened the door with a key.  Officers observed them enter the room, and after about four minutes, the Honda driver exited the motel room and drove away.

- On July 18, 2023, at around 5 pm, LAPD detectives observed three scantily-clad women openly room-hopping between Rooms 8, 12 and 13 before leaving the Motel and walking northbound on Figueroa Street.  LAPD detectives, including a human trafficking expert, believe the women were prostitutes using the New Gage as their home base to engage in prostitution.

Significantly, the Motel office has a clear view of the three staircases leading to the upstairs rooms as well as most of the 16 motel rooms.

4.   Besides the brazen prostitution, since at least 2016, there has also been violence, chaos and lawlessness at the New Gage, including batteries, robberies, attempted robbery, and assaults with deadly weapons, all of which are a predictable consequence of the

rampant prostitution activity occurring there.  The following is a summary of the most recent violent crimes documented by LAPD:

- On April 3, 2023, a man was robbed as he walked on the sidewalk in front of the New Gage by two men leaving the Motel.  One attacker punched the victim in the face, knocking him to the ground while the second assailant forcibly removed victim's keys, phone and airpods from his pocket as he lay on the ground.

- On April 4, 2023, another man was robbed of his car keys, and kicked and punched by his unknown attacker at the New Gage.  Officers followed the blood splatter of the victim, treated by paramedics for head injuries, from the front of New Gage rooms 7 and 8 to a nearby gas station.

- On May 31, 2023, officers responded to the New Gage for an assault with deadly weapon call.  Upon arrival, they observed an individual being treated by paramedics for a head laceration.  Their investigation revealed that he had been in Room 3 at the New Gage with a prostitute he had just met while driving on Figueroa.  Following a verbal dispute regarding the amount of money for her services, the prostitute punched him in the face, struck him on the back of his head with her high-heeled shoe twice, and pepper sprayed him in the face before fleeing.  Paramedics transported the apparent "john" to Gardena Hospital.

- On June 27, 2023, two men were robbed at gunpoint by multiple suspects at the New Gage.  An LAPD helicopter observed someone matching a suspect's description going back and forth from Room 16 to a vehicle parked in the parking lot.  Officers called the occupants out of the room.  Three people emerged from the room including an admitted prostitute who rented the room and gave police consent to search it.  During the search, officers recovered from inside Room 16's air conditioning unit a loaded firearm that had been reported stolen.  The handgun matched the description provided by the

4

robbery victims.  Further investigation revealed that the two victims were "johns" of another prostitute in Room 9, and their failure to pay for her services resulted in her attacking them and instigating the ensuing armed robbery.  One of the "johns" was treated by paramedics for cuts and scratches to his left eyebrow and cheek.

These alarming violent incidents are only a fraction of the actual crimes occurring at the New Gage, as law enforcement cannot patrol the Motel around-the-clock to capture each and every criminal act.

5.      In an effort to stop the prostitution and violence before it escalated to current levels, prosecutors from the City Attorney's Office and LAPD met with representatives from Defendant RISH INVESTMENTS, the New Gage property owner and motel operator, on March 17, 2022.  Present at that meeting were Rajesh Patel, Chief Executive Officer of RISH INESTMENTS, Hitandra Bhakta, RISH INVESTMENTS Chief Financial Officer and Secretary, as well as their attorney Frank Weiser.  At the meeting, prosecutors and LAPD requested that Defendant RISH INVESTMENTS implement all of the following specific measures to abate the nuisance at the New Gage:  prohibit hourly and daily room rentals; gate the driveway to control access; provide camera coverage of all common areas and remotely enable LAPD to access same; require all vehicles parked in the lot to have parking placards; tow all vehicles without placards; engage a daily roving security patrol; and hire new management that enforces these best practices.  Defendant ISLAM appears to have become involved in New Gage operations later that year.

6.      However, more than a year after the March 17, 2022 meeting, defendants have failed to implement and/or sustain most of these measures, and the nuisance at the New Gage persists in a manner more violent and volatile than ever.  To abate the alarming nuisance activity occurring at the Motel once and for all, THE PEOPLE seek injunctive relief and civil penalties against the defendants to change the way they manage and equip the Property in the manner sought by the People as described herein.  In addition, this action also seeks to enjoin and prevent violations of the Unfair Competition Law at the Property based on the unlawful

business practices used to operate the New Gage, and to impose civil penalties stemming from these unlawful business practices.

## THE PARTIES

7.      Plaintiff is THE PEOPLE, acting through the Los Angeles City Attorney, Hydee Feldstein Soto.  Plaintiff brings the first cause of action pursuant to the authority granted to the City Attorney by Penal Code section 11226, the second cause of action pursuant to California Code of Civil Procedure section 731, which authorizes abatement, injunction and penalty of and for public nuisances pursuant to the Public Nuisance Law, California Civil Code sections 3479-3480; and the third cause of action pursuant to California Business and Professions Code section 17204, which authorizes city attorneys of cities having a population in excess of 750,000, such as Los Angeles, to prosecute actions for relief under California Business and Professions Code section 17200, *et seq.* for unlawful competition.

8.      Defendant RISH INVESTMENTS, a California Corporation, has owned the Property since 2006.  According to public records, Defendant RISH has operated the New Gage since 2006.

9.      Plaintiff alleges on information and belief that Defendant ISLAM has been involved in the operation of the Motel since at least 2022.

10.     The true names and capacities of defendants sued herein as Does 1 through 50, inclusive, are unknown to Plaintiff, who therefore sues those defendants by such fictitious names.  When the true names and capacities of those defendants have been ascertained, Plaintiff will seek leave of Court to amend this complaint and to insert in lieu of such fictitious names the true names and capacities of the fictitiously named defendants.

11.     Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants, and DOES 1 through 50, have directly or indirectly maintained or permitted the nuisance described herein.  At all relevant times mentioned herein, Defendants RISH INVESTMENTS and ISLAM and all defendants sued as DOE Defendants were and are agents, lessors, lessees, servants, employees, partners and/or joint venturers of each other

COMPLAINT FOR ABATEMENT AND INJUNCTION

defendant, and at all times were acting within the course and scope of that relationship and with the consent of each of their co-Defendants.

## THE PROPERTY

12.     The New Gage is a 16-unit motel located at 6310 S. Figueroa Street in South Los Angeles.  It is within LAPD's 77th Division and Los Angeles City Council District 8.

13.     The legal description of the Property is:  "Lot 116 of Winton and McLeod's Figueroa Street Tract No. 4, in the City of Los Angeles, County of Los Angeles, California as per map recorded in Book 8, Page(s) 177, of Maps in the Office of the County Recorder of said County.  EXCEPT the westerly 20 feet thereof condemned for widening of Figueroa Street by Decree of Superior Court, a Certified copy of which was recorded in Book 5533, Page 179 of Deeds."  Assessor's Parcel Number 6004-040-009.

## THE RED LIGHT ABATEMENT LAW

14.     The abatement of a nuisance is a long established and well-recognized exercise of the state's police power.  (*People ex rel Bradford v. Barbiere* (1917) 33 Cal.App. 770, 775; *People ex rel. Hicks v. Sarong Gals* (1974) 42 Cal.App.3d 556, 563.)  Under the Red Light Abatement Law, "every building and place used for the purpose of [...] lewdness, assignation, or prostitution, and every building or place in or upon which acts of [...] lewdness, assignation, or prostitution, are held or occur, is a nuisance which *shall* be enjoined, abated, and prevented." (Pen. Code, § 11225(a)(1) (emphasis added).)  Similarly, the statute also designates as a nuisance any building or place in or upon which acts of human trafficking occur. (Pen. Code, § 11225(b)(1).)

15.     A city attorney is authorized to prosecute a civil action to enforce the Red Light Abatement Law.  Under the statute, "[i]f there is reason to believe that a nuisance, as defined in this article, [...] is kept, maintained, or is in existence in any county, the district attorney or county counsel, in the name of the People of the State of California, or the city attorney of an incorporated city [...] may maintain an action in equity to abate and prevent the nuisance and to perpetually enjoin the person conducting or maintaining it, and the owner, lessee, or agent

of the building or place, in or upon which the nuisance exists, from directly or indirectly maintaining or permitting it." (Pen. Code, § 11226.)

16.     When a nuisance under the Red Light Abatement Law exists, injunctive relief is available on an interim and immediate basis.  Penal Code section 11227(a) provides that when, "the existence of a nuisance is shown in an action […] to the satisfaction of the court or judge thereof, either by verified complaint or affidavit, the court or judge *shall* allow a temporary restraining order or injunction to abate and prevent the continuance or recurrence of the nuisance." (Emphasis added.)  In addition, an injunction issued pursuant to subsection 11227(b) may run with the land, enjoining subsequent owners, commercial lessees, or agents who acquire the property and are on notice of the injunction.

17.     Once the existence of a nuisance has been established under the Red Light Abatement Law, "an order of abatement *shall* be entered as part of the judgment in the case." (Pen. Code, § 11230.)  Such an order of abatement provides for the removal and sale of all fixtures and movable property on the premises used in aiding or abetting the nuisance and for the closure of the building for one year during which time its use for any purpose would be prohibited.

## THE PUBLIC NUISANCE LAW

18.     Abatement of nuisances is a long established and well recognized exercise of the state's police power."  (*People ex rel. Hicks v. Sarong Gals* (1974) 42 Cal.App.3d 556, 563; *People ex rel. Bradford v. Barbiere* (1917) 33 Cal.App. 770, 775-778.)  Civil Code section 3479 defines a nuisance as "[a]nything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . ." (*Bakersfield v. Miller* (1966) 64 Cal.2d 93, 99 ["The Legislature has defined in general terms the word 'nuisance' in Civil Code section 3479"].)

19.     Civil Code section 3480 defines a public nuisance as "one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal.

20.     In particular, drug dealing, loitering, consumption of alcohol and illegal drugs, and boisterous conduct which creates a "hooligan-like atmosphere" constitutes a public nuisance.  (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1120.)

21.     Under Civil Code section 3491, "The remedies against a public nuisance are: 1. Indictment or information; 2. A civil action; or, 3. Abatement." "An abatement of a nuisance is accomplished by a court of equity by means of an injunction proper and suitable to the facts of each case." (*Sullivan v. Royer* (1887) 72 Cal. 248, 249.)

22.     Code of Civil Procedure section 731 authorizes a city attorney to bring an action to enjoin or abate a public nuisance. It provides, in pertinent part, "A civil action may be brought in the name of the people of the State of California to abate a public nuisance [...] by the city attorney of any town or city in which the nuisance exists." (*Ibid.*)

23.     A successive owner of a property is liable for a continuing nuisance at the property that started under a former owner, if the successive owner neglects to abate the nuisance.  (Cal. Civ. Code, § 3483.)  Moreover, a repetitive pattern of nuisance activity that began under a former owner will be presumed to continue, repeat and recur under a subsequent owner.  (*See* Cal. Civ. Code, § 3547 ["A thing continues to exist as long as is usual with things of that nature."].)

### THE UNFAIR COMPETITION LAW

24.     The practices forbidden by the state Unfair Competition Law at Business and Professions Code section 17200, et seq. are any practices forbidden by law, be it criminal, federal, state, municipal, statutory, regulatory or court-made.  As the California Supreme Court has explained, the UCL "borrows violations of other laws and treats them as unlawful practices independently actionable under section 17200 et seq." (*South Bay Chevrolet v. General Motors Acceptance Corp.* (1999) 72 Cal.App.4th 861, 880 (internal citations and quotation marks omitted).)

25.     As proscribed by the UCL, "[a]n 'unlawful business activity' includes anything that can properly be called a business practice and that at the same time is forbidden by law." (*People v. McKale* (1979) 25 Cal.3d 626, 632.)  Moreover, the UCL casts a broad net.  "Any

person who engages, has engaged, or proposes to engage in unfair competition may be enjoined . . ."  (Bus. & Prof. Code, § 17203.)  The term person includes "natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons."  (Bus. & Prof. Code, § 17201.)  The courts have expanded section 17200's net beyond direct liability to include common law doctrines of secondary liability where the liability of each defendant is predicated on his or her personal participation in the unlawful practices.  (*People v. Toomey* (1985) 157 Cal.App.3d 1, 14; *Emery v. Visa Int'l Service Ass'n* (2002) 95 Cal.App.4th 952, 960.)

26.    Civil actions under the UCL may be brought in the name of the People of the State of California by any city attorney of a city having a population in excess of 750,000 (Bus. & Profs. Code, § 17204), such as the City of Los Angeles.  A public entity can sue pursuant to section 17200 based on violations of its own municipal code, state law, or other local ordinance.  *(People v. Thomas Shelton Powers, M.D., Inc.* (1992) 2 Cal.App.4th 330, 338-339.)

27.    Defendants engaging in violations of the UCL may be enjoined in any court of competent jurisdiction.  (Bus. & Profs. Code, § 17203.)  A court may make such orders or judgments, including appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice constituting unfair competition.  (*Id.*)

28.    Although no case has specifically been called upon to define the term "business" in section 17200, the courts have frequently given a broad reading to the provisions of the UCL so as to affect its broad remedial purposes.  (*See, e.g., Barquis v. Merchants Collection Ass'n* (1972) 7 Cal.3d 94, 111-113.)   An enterprise engaged entirely in criminal conduct, such as the manufacture of illegal drugs or obscene matter, is a business for purposes of section 17200.  (*People v. E.W.A.P., Inc.* (1980) 106 Cal.App.3d 315, 320-321.)  Moreover, recent amendments to section 17200 make clear that even a one-time act of misconduct can constitute a violation of the UCL.  (*Klein v. Earth Elements, Inc.* (1997) 59 Cal.App.4th 965, 969.)

29.     The ownership and operation of a motel is a "business," and any owner of such a business who conducts, maintains, or permits a nuisance that is unlawful under the RAL is in violation of the UCL.  Similarly, when the owner of a commercial property conducts, maintains or permits a nuisance that is unlawful under the RAL to exist on the premises, the property owner is in violation of the UCL.

**FIRST CAUSE OF ACTION**

**[For Violation of the Red Light Abatement Law – Against All Defendants and Does 1-50]**

30.     THE PEOPLE incorporate paragraphs 1 to 29 above as if fully alleged herein.

31.     This action is brought and prosecuted for the purpose of enjoining, abating, and preventing a nuisance, as defined in California Penal Code section 11225, et seq., which exists at the Property.

32.     Since at least 2017, LAPD has conducted at least 16 vice investigations into the New Gage resulting in 16 prostitution-related arrests, one of which involved a juvenile, at or connected to the New Gage.  Additionally, since 2019, three motel employees were cited for registration and disorderly house violations, including hourly room rental violations. The New Gage has a well-known and deeply entrenched reputation among law enforcement, the local community, and even on popular online forums as being notorious for prostitution. Investigations conducted by LAPD as recently as July 2023 confirm that prostitution is thriving at the New Gage.

33.     Since at least 2017, Defendants and DOES 1-50 have used or permitted the Property to be used for the purposes of prostitution and/or the Property is a place where acts of prostitution regularly occur.

34.     As a result, the Property is a nuisance per se because of the ongoing and continuous prostitution activities occurring there, and must therefore be abated pursuant to the Red Light Abatement Law.

35.     From 2017 to the present, Defendants and DOES 1-50 violated the Red Light Abatement Law by conducting, maintaining, or permitting, directly or indirectly, nuisance

COMPLAINT FOR ABATEMENT AND INJUNCTION

prostitution acts to occur and/or by failing to abate or prevent nuisance prostitution acts from occurring at the Property.

36.     Plaintiff has no adequate remedy at law, and unless Defendants and DOES 1-50 are enjoined and restrained by order of the Court, they will continue to directly or indirectly maintain or permit the nuisance prostitution acts to occur at the Property, to the irreparable damage of the community and in violation of the law.  Since THE PEOPLE have no plain, speedy, or adequate remedy at law, they request the injunctive relief that is expressly provided by Penal Code sections 11225-11231.

**SECOND CAUSE OF ACTION**

**[For Violation of Civil Code Section 3479, *et seq.* -- Against All Defendants and DOES 1 through 50]**

37.     Plaintiff incorporates by reference Paragraphs 1 through 36 of this Complaint and makes them part of this Second Cause of Action as though fully set forth herein.

38.     Since at least 2016, and continuing through the present, the Property has been owned, operated, occupied, used, and/or directly or indirectly permitted to be occupied and used, in such a manner as to constitute a public nuisance in violation of Civil Code sections 3479 and 3480.  The public nuisance, as described herein, is injurious to health, indecent or offensive to the senses, and/or an obstruction to the free use of property, so as to substantially and unreasonably interfere with the comfortable enjoyment of life or property by those persons living at the Property and in the surrounding community.  Besides the blatant prostitution, the public nuisance consists of a steady stream of violence at the New Gage, including batteries, robberies, attempted robbery, and assaults with deadly weapons, many of which have prostitution overtones.

39.     Defendants, and DOES 1 through 50, in owning, conducting, maintaining, and/or permitting the use of the Property, directly or indirectly, as a public nuisance, have engaged in wrongful conduct and caused a serious threat to the general health, safety and welfare of the law-abiding customers, guests at the Property and persons in the area surrounding the Property.

40.       Furthermore, Plaintiff is informed and believes, and thereon alleges, that Defendants and DOES 1 through 50 knew or should have known about the nuisance activity there, and/or actively participated in it, and/or failed to take reasonable steps to prevent or abate the ongoing nuisance, and as a result have caused and/or contributed to a serious threat to the general health, safety, and welfare of the law-abiding patrons at the Property and persons in the surrounding community.

41.       Unless Defendants, and DOES 1 through 50, are restrained and enjoined by order of this Court, they will continue to use, occupy and maintain, and to aid, abet or permit, directly or indirectly, the use, occupation, and maintenance of the Property, together with the fixtures and appurtenances located therein, for the purpose complained of herein, to the great and irreparable damage of Plaintiff and in violation of California law.

## THIRD CAUSE OF ACTION

**[For Violation of the Unfair Competition Law – Against All Defendants and Does 1-50]**

42.       THE PEOPLE incorporate paragraphs 1 to 41 above, as if fully alleged herein.

43.       The City of Los Angeles has a population in excess of 750,000 and the Los Angeles City Attorney brings the cause of action alleged herein on behalf of THE PEOPLE, pursuant to Business and Professions Code section 17204.

44.       From at least 2016 to the present, Defendants and DOES 1-50  violated the Unfair Competition Law by engaging in the following unlawful business acts and practices:

A.       Maintaining, or permitting, directly or indirectly, as well as failing to abate or prevent, nuisance prostitution acts at the Property in violation of Penal Code section 11225 et seq., as shown by each and every prostitution-related, Penal Code § 316 (disorderly house), and/or LAMC § 41.49 arrest and/or citation made by LAPD at the Property as well as the solicitation for acts of prostitution made to LAPD officers and others at the Property.

B.       Maintaining, or permitting, directly or indirectly, as well as failing to abate or prevent, a public nuisance in violation of Civil Code section 3479 et seq., as shown by each and every act of violence at the Property documented by LAPD.

45.     Defendants' and DOES' 1-50 unlawful business acts or practices present a continuing threat to the public's health, safety, and welfare. THE PEOPLE have no adequate remedy at law, and unless Defendants and DOES' 1-50 are permanently enjoined and restrained by order of the Court, they will continue to commit unlawful business acts or practices, and thereby continue to cause irreparable harm to the public's health, safety, and welfare.

## PRAYER

WHEREFORE, PLAINTIFF PRAYS THAT THIS COURT ORDER, ADJUDGE, AND DECREE AS FOLLOWS:

### AS TO THE FIRST CAUSE OF ACTION

AS TO ALL DEFENDANTS AND DOES 1-50

1.     All Defendants and the Property, including all buildings and structures thereon, be declared in violation of Penal Code section 11225, et seq.;

2.     That the Property, together with the fixtures and movable property therein and thereon, be declared a nuisance and be permanently abated as such in accordance with Penal Code section 11230;

3.     That the Court grant preliminary and permanent injunctions in accordance with Penal Code section 11225 et seq., enjoining and restraining Defendants and their agents, officers, employees and anyone acting on their behalf, from conducting, permitting, maintaining, either directly or indirectly, the use of the Property as a nuisance including but not limited to:  prohibiting hourly and daily room rentals, prohibiting guests from having visitors, gating the driveway to control access, providing camera coverage of all common areas and remotely enable LAPD to access same, requiring all vehicles parked in the lot to have parking placards, towing all vehicles without placards, engaging daily roving security patrol, and hiring and maintaining new management that will enforce these rules;

4.     That as part of the Judgment, an Order of Abatement be issued, and that the Property be closed for a period of one year, not to be used for any purpose, and be under the control and custody of this Court for said period of time;

5.      That all fixtures and moveable property used in conducting, maintaining, and/or permitting the nuisance at the Property be removed by LAPD and sold in the manner provided for the sale of chattels under execution, and that the proceeds from said sale be deposited with this Court for payment of the fees and costs of sale[3];

6.      That the owners of the Property be required to obtain the Court's prior approval before transferring, conveying, or encumbering, for consideration or otherwise, any portion of the Property;

7.      That the owners of the Property be ordered to immediately give a complete, legible copy of any temporary restraining order and preliminary and permanent injunctions to all prospective transferees, purchasers, commercial lessees, or other successors in interest to the Property;

8.      That Defendants and DOES 1-50 be ordered to immediately request and procure signatures from all prospective transferees, purchasers, commercial lessees, or other successors in interest to the Property, which acknowledges his/her respective receipt of a complete, legible copy of any temporary restraining order, preliminary and permanent injunction, and deliver a copy of such acknowledgment to the Los Angeles City Attorney's Office, c/o Deputy City Attorney Liora Forman-Echols;

9.      That each defendant be assessed a civil penalty in an amount not to exceed $25,000.00, as permitted under the RAL;

10.     That THE PEOPLE recover the costs of this action, including LAPD investigative costs and attorneys' fees pursuant to California Civil Code section 3496(b), in an amount up to $2,000,000.00;

---

[3]Said fixtures and property shall be inventoried and a list prepared and filed with this Court.  There shall be excepted from the sale such property to which title is established in some third party not a defendant, nor agent, officer, employee or servant of any Defendant in this proceeding.  Such costs as may occur in closing said Property and keeping it closed, removal of the property, and such other costs as the Court shall deem proper.  If the proceeds of the sale do not fully discharge all such costs, fees and allowances, the Property shall also be sold under execution issued upon the order of the Court or judge and the proceeds of such sale shall be applied in a like manner.  Any excess monies remaining after payment of approved costs shall be delivered to the owners of the Property.  Ownership shall be established to the satisfaction of this Court.

COMPLAINT FOR ABATEMENT AND INJUNCTION

11.     That THE PEOPLE recover the amount of filing fees and the amount of fee for service of process or notices which would have been paid but for Government Code section 6103.5;

12.     That THE PEOPLE be granted such other and further relief as the Court deems just and proper;

### AS TO THE SECOND CAUSE OF ACTION

AS TO ALL DEFENDANTS AND DOES 1-50

13.     That the Property, together with the fixtures and moveable property therein and thereon, be declared a public nuisance and be permanently abated as such in accordance with Civil Code section 3491;

14.     That each Defendant and their agents, officers, employees, and anyone acting on their behalf, and their heirs and assignees, be preliminarily and perpetually enjoined from operating, conducting, using, occupying, or in any way permitting the use of the Property as a public nuisance[4];

15.     That a receiver be appointed to carry out the Court's orders; and such other orders as are appropriate to remedy the nuisance at the Property and enhance the abatement process;

16.     That Plaintiff be awarded such costs as may occur in abating said nuisance at the Property and such other costs as the Court may deem just and proper;

17.     That Plaintiff be granted such other and further relief as the Court deems just and proper, including closure of the Property;

---

[4] Such orders should include, but not be limited to preliminary and permanent injunctions enjoining and restraining Defendants and their agents, officers, employees and anyone acting on their behalf, from conducting, permitting, maintaining, either directly or indirectly, the use of the Property as a nuisance including but not limited to:  prohibiting hourly and daily room rentals, prohibiting guests from having visitors, gating the driveway to control access, providing camera coverage of all common areas and remotely enable LAPD to access same, requiring all vehicles parked in the lot to have parking placards, towing all vehicles without placards, engaging daily roving security patrol, and hiring and maintaining new management that enforces these rules.

COMPLAINT FOR ABATEMENT AND INJUNCTION

## AS TO THE THIRD CAUSE OF ACTION

AS TO ALL DEFENDANTS AND DOES 1-50

18.     That each defendant and their agents, officers, employees and anyone acting on their behalf be declared in violation of Business and Professions Code section 17200 et seq. for the prostitution activity at the Property;

19.     That the Court grant a preliminary and permanent injunction prohibiting Defendants and their agents, officers, employees and anyone acting on his behalf from engaging in the unfair or unlawful business act or practice in violation of Business and Professions Code sections 17200 et seq. as herein described on the Property[5];

20.     That a receiver be appointed to carry out the Court's orders, and such other orders as are appropriate to remedy the nuisance at the Property and enhance the abatement process;

21.     That pursuant to Business and Professions Code sections 17200 et seq., each Defendant, and each of their agents, officers, employees and anyone acting on their behalf, be assessed a civil penalty of $2,500.00 for each and every unlawful business act, including every day that the Property has been maintained as a nuisance under the Red Light Abatement Law and a public nuisance, up to a maximum amount of $3.65 million per Defendant;

22.     That THE PEOPLE be granted such other and further relief as the Court deems just and proper;

///

///

///

///

---

[5] Such orders should include, but not be limited to preliminary and permanent injunctions enjoining and restraining Defendants and their agents, officers, employees and anyone acting on their behalf, from conducting, permitting, maintaining, either directly or indirectly, the use of the Property as a nuisance by: prohibiting hourly and daily room rentals, prohibiting guests from having visitors, gating the driveway to control access, providing camera coverage of all common areas and remotely enable LAPD to access same, requiring all vehicles parked in the lot to have parking placards; towing all vehicles without placards, engaging daily roving security patrol, and hiring and maintaining new management that enforces these rules.

## <u>AS TO ALL CAUSES OF ACTION</u>

AS TO ALL DEFENDANTS AND DOES 1-50

23.     That Plaintiff recover the amount of the filing fees and the amount of the fee for the service of process or notices which would have been paid but for Government Code section 6103.5, designating it as such[6]; and

24.     That Plaintiff be granted such other and further relief as the Court deems just and proper.


DATED: August 4, 2023          Respectfully submitted,
                               HYDEE FELDSTEIN SOTO, City Attorney


                                    /s/ Liora Forman-Echols
                               By: _____
                                   LIORA FORMAN-ECHOLS, Supv. Deputy City Attorney
                                   Attorney for Plaintiff, THE PEOPLE OF THE STATE
                                   OF CALIFORNIA

---

[6] The fees may, at the Court's discretion, include the amount of the fees for certifying and preparing transcripts.

Frank A. Weiser (#89780)
Law Offices of Frank A. Weiser
3460 Wilshire Blvd., Suite 1212
Los Angeles, CA 90010
Telephone: (213) 384-6964
Telefax: (213) 383-7368
E-Mail:  maimons@aol.com

Electronically FILED by
Superior Court of California,
County of Los Angeles
9/19/2023 7:31 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By R. Yanez, Deputy Clerk

Attorney for Defendant
RISH INVESTMENTS,
INC., a California corporation

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

THE PEOPLE OF THE STATE
OF CALIFORNIA,


            Plaintiff,

v.

RISH INVESTMENTS, INC., a
California corporation; GAZI
MONIRUL ISLAM, also known as
GAZI M. ISLAM and GAZI
ISLAM, an individual doing business
as New Gage Motel; and DOES 1
through 50, inclusive,

            Defendants.

Case No.:  23STCV18514

**ANSWER TO COMPLAINT**

1

Defendant RISH INVESTMENTS, INC., a California corporation

("Defendant") hereby file the following Answer to Complaint and state and allege as

follows:

### FIRST CAUSE OF ACTION

1. Defendant denies each and every allegation in paragraphs 1, 2, 3, 4, 5, 6,

7, 8, 9, 10, 11, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, as

incorporated by paragraph 30 of the Complaint, and further denies paragraphs 31,

32, 33, 34, 35, 36 of the Complaint.

2.   Defendant admits each and every allegation in paragraphs 12, 13, as

incorporated by paragraph 30 of the Complaint.

### SECOND CAUSE OF ACTION

3. Defendant denies each and every allegation in paragraphs 1, 2, 3, 4, 5, 6,

7, 8, 9, 10, 11, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31,

32, 33, 34, 35, 36 as incorporated by paragraph 37 of the Complaint, and further

denies paragraphs 38, 39, 40, 41 of the Complaint.

4.   Defendant admits each and every allegation in paragraphs 12, 13, as

incorporated by paragraph 37 of the Complaint.

### THIRD CAUSE OF ACTION

5. Defendant denies each and every allegation in paragraphs 1, 2, 3, 4, 5, 6,

7, 8, 9, 10, 11, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31,

32, 33, 34, 35, 36, 37, 38, 39, 40, 41 as incorporated by paragraph 42 of the Complaint, and further denies paragraphs 43, 44, 45 of the Complaint.

6.   Defendant admits each and every allegation in paragraphs 12, 13, as incorporated by paragraph 42 of the Complaint.

### FIRST AFFIRMATIVE DEFENSE

7.   The Complaint, and each cause of action alleged against the Defendant herein, fails to state facts sufficient to constitute a cause of action against the Defendant.

### SECOND AFFIRMATIVE DEFENSE

8.   The Complaint, and each cause of action alleged against the Defendant herein, is barred by the fact that if Plaintiff has sustained any injuries, a fact that Defendant denies, it is not the result of any intentional act, omission, negligence, or negligent hiring by the Defendant.

### THIRD AFFIRMATIVE DEFENSE

9.   The Complaint, as to each cause of action alleged against the Defendants herein, is barred by the fact that if Plaintiffs have sustained any injuries, a fact that Defendants deny, is barred by the primary jurisdiction doctrine which lies in administrative proceedings with the City of Los Angeles Zoning Administrator.

### FOURTH AFFIRMATIVE DEFENSE

10.   The Complaint, as to each cause of action alleged against the Defendants herein, is barred by the fact that if Plaintiffs have sustained any injuries,

3

a fact that Defendants deny, is barred by the failure to join in the action all necessary and indispensable parties.

## FIFTH AFFIRMATIVE DEFENSE

11. The Complaint, as to each cause of action alleged against the Defendant herein, is barred by the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

## SIXTH AFFIRMATIVE DEFENSE

12. The Complaint, as to each cause of action alleged against the Defendant herein, is barred by the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

## SEVENTH AFFIRMATIVE DEFENSE

13. The Complaint, as to each cause of action alleged against the Defendant herein, is barred by the Takings Clause of the Fifth and Fourteenth Amendments of the United States Constitution.

## EIGHTH AFFIRMATIVE DEFENSE

14. The Complaint, as to each cause of action alleged against the Defendant herein, is barred by the Search and Seizure Clause of the Fourth and Fourteenth Amendments of the United States Constitution.

## NINTH AFFIRMATIVE DEFENSE

15.   The Complaint, as to each cause of action alleged against the

Defendant herein, is barred by the Petition and Grievances Clause of the First and

Fourteenth Amendments of the United States Constitution.

## TENTH AFFIRMATIVE DEFENSE

16.   The Complaint, as to each cause of action alleged against the

Defendant herein, is barred by the Free Speech Clause of the First and

Fourteenth Amendments of the United States Constitution.

## ELEVENTH AFFIRMATIVE DEFENSE

17.   The Complaint, as to each cause of action alleged against the

Defendant herein, is barred by the Association Clause of the First and

Fourteenth Amendments of the United States Constitution.

## TWELFTH AFFIRMATIVE DEFENSE

18.   The Complaint, as to each cause of action alleged against the

Defendant herein, is barred by the Due Process Clause of the Fourteenth

Amendment of the United States Constitution, as the Defendant cannot obtain a

fair trial in this Court and requests transfer of the action to another county.

## THIRTEENTH AFFIRMATIVE DEFENSE

19.   The Complaint, as to each cause of action alleged against the

Defendant herein, is barred by the Equal Protection Clause of the Fourteenth

Amendment of the United States Constitution, as the Defendant cannot obtain a

fair trial in this Court and requests transfer of the action to another county.

## FOURTEENTH AFFIRMATIVE DEFENSE

20. The Complaint, as to each cause of action alleged against the Defendant herein, is barred by 42 U.S.C. Section 1982.

## FIFTEENTH AFFIRMATIVE DEFENSE

21. The Complaint, as to each cause of action alleged against the Defendant herein, is barred by 42 U.S.C. Section 3604, et seq., the Federal Fair Housing Act.

WHEREFORE, Defendant prays judgment against the Plaintiff, and each of them, as follows:

1. That the Plaintiff take nothing by way of the Complaint;

2. For attorney's fees;

3. For costs of suit;

4. For such other and further relief as the Court deems proper.


Dated: September 19, 2023          LAW OFFICES OF FRANK A. WEISER

                                   By: _____
                                       FRANK A. WEISER, Attorney for
                                       for Defendant RISH INVESTMENTS,
                                       INC., a California corporation

6

**PROOF OF SERVICE**

State of California      )

                        )

County of Los Angeles  )

        I am employed and/or reside in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my employment is at 3460 Wilshire Blvd., Suite 1212, Los Angeles, CA 90010.

        On September 19, 2023, I personally served the foregoing document described as: **ANSWER TO COMPLAINT** on the party in this action by federal expressing and e-mailing a true copy on the interested parties at the address as follows:

> Hydee Feldstein Soto, City Attorney
> Kathleen A. Kenealy, Chief Deputy City Attorney
> Jonathan Cristall, Suprv. Asst. City Attorney
> Liora Forman-Echols, Superv. Deputy City Attorney
> Office of the Los Angeles City Attorney
> 201 North Figueroa Street. 13th fllor
> Los Angeles, California 90012
> E-Mail: liora.forman-echols@lacity.org

X    BY E-MAIL TRANSMISSION: I transmitted such document to the persons at the e-mail address listed above

X    BY FEDERAL EXPRESS:  I delivered such document in a sealed federal express envelope to a Kinko's/Federal Express Office in Los Angeles, CA to be delivered to the persons listed as addressed above.

1

       Executed on September 19, 2023 at Los Angeles, California.

2

       I declare under penalty of perjury under the laws of the State of

3

California that the above is true and correct.

4

5

6

                           Frank A. Weiser

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28